IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 03-cv-00386-BNB-PAC

THOMAS S. MAYES,

Plaintiff,

v.

JOHN E. POTTER, U.S. POSTAL SERVICE,

Defendant.
_____

**ORDER**
_____

This matter is before me on **Defendant's Motion for Summary Judgment on Disability Discrimination Claim and Brief in Support Thereof** [Doc. #62, filed 3/21/06] (the "Motion"). For the following reasons, the Motion is DENIED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*. I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed.R.Civ.P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate specific evidence showing that there is a genuine issue of material fact for trial. Id. at 324.

## II. UNDISPUTED MATERIAL FACTS

The plaintiff filed his Amended Complaint (the "Complaint") on September 17, 2003. At all times relevant to the allegations of the Complaint, the plaintiff was an employee of the United States Postal Service at the General Mail Facility in Denver, Colorado (the "Postal Service"). *Complaint*, first consecutive page; *Motion*, p. 2, ¶ 1; *Plaintiff's Response in Opposition to . . . thereof* [Doc. #66, filed 4/21/06] (the "Response"), p. 2, ¶ 10. The plaintiff's employment with the Postal Service began in April 1985. *Motion*, p. 2, ¶ 2; *Response*, p. 2, ¶ 2..

On January 3, 2002, the plaintiff met with his supervisor, Mona Tebeau. *Motion*, p. 3, ¶ 8; *Response*, p. 3, ¶ 11. The meeting involved the plaintiff's work performance, of which Ms. Tebeau was critical. *Motion*, p. 3, ¶ 10; *Response*, p. 3, ¶ 11.

The plaintiff took leave from the Postal Service on January 5, 2002. *Response*, p. 3, ¶ 12. The plaintiff returned to the Postal Service on May 31, 2002. *Motion*, p. 3, ¶ 13; *Response*, p. 3, ¶ 12.

The Complaint asserts five claims alleging gender and disability discrimination. Claim One alleges that the plaintiff suffered discrimination when his supervisor, Ms. Tebeau, verbally assaulted him at the meeting on January 3, 2002. Claim Two alleges that "the defendant" continued its harassment of the plaintiff "via the United States First Class mail with threatening correspondence while plaintiff was in treatment." Claim Three alleges that the defendant continued its harassment of the plaintiff when it gave false statements to the United States Department of Labor and when the plaintiff was assigned to the same location and supervisor upon his return to work on June 3, 2002. Claim Four alleges that the plaintiff was forced to resign from his job "to maintain mental stability when no action was taken and the harassment continued." Claim Five seeks compensatory damages for all of the defendant's "actions and non-actions."

The defendant filed a motion for summary judgment on March 21, 2005. On March 2, 2006, I issued an order on the summary judgment motion. [Doc. #59, issued March 2, 2006, filed March 3, 2006]. I construed Claim Five solely as a prayer for relief and not as a separate claim. I found that Claims Two, Three, and Four were barred for lack of subject matter jurisdiction because the plaintiff did not exhaust his administrative remedies as to those claims. I found that the plaintiff had exhausted his administrative remedies as to Claim One, and I granted summary judgment in favor of the defendant on Claim One insofar as the claim alleges gender discrimination under Title VII. I construed Claim One's allegations of disability discrimination as asserted pursuant to the Rehabilitation Act.[1] I denied without prejudice the defendant's motion

---

[1] Section 501 of the Rehabilitation Act provides a federal employee's exclusive remedy for employment discrimination based on a disability. Williams v. Widnall, 79 F.3d 1003, 1005 (10th Cir. 1996). See also Johnson v. United States Postal Serv., 861 F.2d 1475, 1477 (10th Cir.1988);

3

insofar as it sought summary judgment on the allegations of disability discrimination contained in Claim One, and I permitted the parties an opportunity to file additional briefing on the claim. The defendant now seeks summary judgment on the allegations of disability discrimination under the Rehabilitation Act contained in Claim One.

### III. ANALYSIS

Claim One alleges that the plaintiff suffered disability discrimination when Ms. Tebeau verbally assaulted him at the meeting on January 3, 2002. In order to prove disability discrimination under the Rehabilitation Act, the plaintiff must establish a *prima facie* case. Woodman v. Runyon, 132 F.3d 1330, 1338 (10th Cir. 1997). To establish a *prima facie* case of discrimination under section 501 of the Rehabilitation Act, the plaintiff must prove that (1) he is "disabled" within the meaning of the statute; (2) he is "otherwise qualified," that is, he can perform the essential functions of the job with or without accommodation; and (3) the personnel action was taken by defendant because of his disability. Id.

#### A. *Prima Facie* Showing of Disability

The defendant asserts that the plaintiff does not have a disability that substantially limits a major life activity. *Motion*, pp. 5-6. In analyzing the meaning of disabled under the Rehabilitation Act, I note that Section 501 of that Act adopts the standards set forth in Title I of the Americans with Disabilities Act ("ADA") for federal employees with disability discrimination claims. 29 U.S.C. § 791(g). Under the ADA, a "disability" is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

---

Coleman v. Darden, 595 F.2d 533, 538 (10th Cir.1979).

4

> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

"The burden is on the plaintiff to establish the existence of an impairment that substantially limits a major life activity as an element of the plaintiff's prima facie case." <u>Jasany v. United States Postal Service</u>, 755 F.2d 1244, 1249 (6th Cir. 1985).

The plaintiff asserts that he meets all three of the definitions of a disability with regard to the major life activities of standing, walking, lifting, pushing, pulling, and working. *Response*, pp. 5-6, 8. The plaintiff provides the following undisputed evidence to establish that he was disabled at the time of his meeting with Ms. Tebeau on January 3, 2002:

> 1. On March 31, 1989, the plaintiff sustained a 16% permanent partial loss of the use of his right leg from an on-the-job injury. <u>Id.</u> at Exhibit 23. As a result of documentation from the plaintiff's physician, the Postal Service found that the plaintiff was unable to perform his regular duties. <u>Id.</u> at Exhibit 24, p. 1. The Postal Service presented the plaintiff with a "Limited Duty Job Offer" in the Patching Unit, which he accepted on April 3, 1991. <u>Id.</u> The Patching Unit job contained the following physical requirements that were within the plaintiff's restrictions: (1) intermittent lifting of up to 100 pounds; (2) continuous standing and walking for six to eight hours per day; (3) intermittent stooping and bending for four to six hours per day; (4) sitting in a chair for eight hours per day; (5) intermittent twisting and kneeling; (6) intermittent carrying, pushing, and pulling for six to eight hours per day; and (7) intermittent reaching for one to two hours per day. <u>Id.</u>

2. On December 27, 1995, the plaintiff accepted a job in the Patching Unit that contained the following physical requirements: (1) continuous lifting of 0-5 pounds seven hours per day; (2) intermittent lifting of 5-20 pounds one hour per day; (3) continuous sitting for seven hours per day; (4) intermittent walking for one hour per day; (5) intermittent pushing and pulling for one hour per day; and (6) continuous simple grasping for seven hours per day. Id. at Exhibit 24, p. 2.

3. On September 30, 1992, the plaintiff sustained an 8% permanent partial loss of the use of his right arm from an on-the-job injury. Id. at Exhibit 26, pp. 1-3. On June 13, 2000, the Postal Service sent to the plaintiff a "Rehab/Reassignment Job Offer Correction" which states that the Postal Service had located an assignment within the restrictions outlined by the plaintiff's treating physician regarding his injury. Id. at Exhibit 25, p. 1. The plaintiff accepted the job. Id. at p. 2. The physical requirements of the job do not exceed the plaintiff's physical restrictions. Id. at p. 3. The physical requirements of the job are: (1) continuous lifting of 0-10 pounds for seven hours per day; (2) intermittent lifting of 10-20 pounds for one hour per day; (3) intermittent walking for one hour per day; (4) continuous sitting for seven hours per day; and (5) intermittent pushing and pulling for one hour per day.

### 1. Actual Impairment

The plaintiff maintains that the permanent injury to his right leg "limits his standing and walking [] a maximum of 15 minutes at one time during a sixty minute period, respectively." *Response*, p. 5. The plaintiff further maintains that the permanent injury to his right arm limits his ability to lift, push, and pull. Id. at p. 6.

The law regarding whether a claimant's injury constitutes a disability under the Rehabilitation Act is well-established in the Tenth Circuit:

> Under subsection (A), a plaintiff must show that an impairment substantially limits at least one major life activity. This definition contains three elements. First, the plaintiff must have a recognized impairment; second, the plaintiff must identify one or more appropriate major life activities; and third, the plaintiff must show that the impairment substantially limits one or more of those activities. The plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impairment, and the court is to analyze only those activities identified by the plaintiff. Whether the plaintiff has an impairment within the meaning of the ADA is a question of law for the court to decide. Whether the conduct affected is a major life activity for purposes of the Act is also a legal question for the court. However, ascertaining whether the impairment substantially limits the major life activity is a factual question for the jury. Determining both how well 'the average person in the general population' performs any given major life activity and whether the plaintiff has proven he is 'unable to perform' or is 'significantly restricted' in performing a major life activity involves weighing evidence and assessing credibility of witnesses, tasks historically given to the jury in our judicial system.

Doebele v. Sprint/United Management Co., 342 F.3d 1117, 1129 (10th Cir. 2003).

### a. Pushing and Pulling

The record does not contain any evidence which specifies the plaintiff's limitations regarding pushing and pulling. Therefore, it is impossible to determine whether the plaintiff has an impairment that affects his ability to push or pull.

Even if I were to consider the 8% loss of use of the plaintiff's arm as an impairment, the mere existence of an impairment does not make one disabled for purposes of the Rehabilitation Act. Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 195 (2002) (citing the Rehabilitation Act in the analysis of an ADA claim). "Claimants also need to demonstrate that the impairment limits a major life activity." A claimant must "further show that the limitation on the major life activity is substantial." Id. Major life activities are "those activities that are of

7

central importance to daily life." Id. at 197. The term "substantial" suggests "considerable" or "to a large degree." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999).

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act's protection · · · to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience · · · is substantial. That the Act defines "disability" "with respect to an individual," 42 U.S.C. § 12102(2), makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner.

Id. at 198 (internal quotations and citations omitted).

The plaintiff has not demonstrated that his arm injury constitutes an impairment that substantially limits a major life activity with regard to pushing and pulling.

### b. Working

In order to establish that an impairment substantially limits the major life activity of working, a claimant must show--at a minimum--an inability to work in a broad range of jobs rather than a specific job. Sutton, 527 U.S. at 491.

The plaintiff does not provide any evidence to establish an inability to work in a broad range of jobs. To the contrary, his evidence establishes that the Postal Service found him unable to perform specific jobs and offered him alternative positions that contained physical requirements within the plaintiff's documented restrictions. The plaintiff has failed to establish that he has an actual disability with regard to the major life activity of working.

### c. Standing, Walking, and Lifting,

The plaintiff claims that his leg injury prevents him from standing and walking for more than fifteen minutes per hour and that his arm injury limits his ability to lift. *Response*, pp. 5-6.

8

The plaintiff does not cite to or provide any evidence supporting these claims. The defendant, however, has filed a copy of the plaintiff's deposition transcript, which contains the plaintiff's testimony that because of his leg injury he can walk for only fifteen minutes in a one hour period, and he can stand continuously for only fifteen minutes within each hour. *Motion*, Exhibit A2, p. 56, l. 18- p. 57, l. 24. The plaintiff further testified that his leg impairment has affected his daily life activities as follows:

> Any of the work that I normally do--would do around the house. Yard work, the maintenance of my home, activities with my kids are all limited because of that.
>
> ***
>
> In that I can't do it with a consistency of longer than 15 minutes. Certain sports--I can't play with my son or with anybody. Certain things--I have to pay for other people to come and do what I would normally be able to do myself, such as paint my house, clean my gutters, trim my trees.

Id. at p. 57, l. 24 - p. 58, l. 11.

The plaintiff also testified that, with regard to his arm injury, he is not supposed to lift with his hand above his head, nor is he to perform any type of repetitive motion with his shoulders. Id. at p. 56, ll. 5-12.

Based on the plaintiff's deposition testimony and his exhibits, I find that he has established that his leg and arm injuries constitute impairments and that the impairments limit the major life activities of walking, standing, and lifting. Rakity v. Dillon Companies, Inc., 302 F.3d 1152, 1158 (10th Cir. 2002) (stating that walking, standing, and lifting are major life activities). Whether the plaintiff's impairments *substantially* limit the major life activities of walking, standing, and lifting are factual questions for the jury. Doebele, 342 F.3d at 1129.

### 2. Record of Impairment

The plaintiff asserts that he has a "record of impairment" in satisfaction of the second disability definition under the Rehabilitation Act. *Response*, p. 8. "To have a record of such an impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity." Doebele, 342 F.3d at 1132 (internal quotation and citation omitted). "The record-of-impairment standard is satisfied only if [the plaintiff] actually suffered an impairment that substantially limited one or more of [his] major life activities." Id. (internal quotation and citation omitted).

> This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records.

29 C.F.R. Pt. 1630, App., § 1630.2(k).

The plaintiff proffers letters from the Department of Labor and physicians, and job descriptions from the Postal Service. *Response*, Exhibits 23, 24, 26. None of these exhibits contain any evidence that the plaintiff actually suffered an impairment that substantially limits a major life activity with regard to the major life activities of standing, walking, lifting, pushing, pulling, and working. As discussed above, the plaintiff's own testimony is the only evidence which demonstrates that the plaintiff has an impairment that affects a major life activity. Accordingly, the plaintiff has failed to establish that he has a record of a disability under the second definition of the Rehabilitation Act.

### 3. Regarded as Having Impairment

Finally, the plaintiff asserts that the defendant regarded him as disabled. *Response*, p. 8. In order to establish that the defendant regarded him as disabled under the Rehabilitation Act, the plaintiff must establish that the defendant (1) mistakenly believed that the plaintiff had a physical impairment that substantially limits one or more major life activities, or (2) mistakenly believed that an actual, nonlimiting impairment substantially limits one or more major life activities. Sutton, 527 U.S. at 489.

The plaintiff provides evidence that the defendant was aware of the plaintiff's impairments and offered him jobs which accommodated the impairments. However, in order to establish that the defendant regarded the plaintiff as disabled under the Rehabilitation Act, the plaintiff must show that the defendant *believed* that the plaintiff's impairments *substantially limited a major life activity*. The plaintiff has not provided any evidence that the defendant believed that the plaintiff's impairments substantially limit one or more of his major life activities.[2] Consequently, the plaintiff has failed to establish that the defendant regarded him a disabled within the meaning of the Rehabilitation Act.

### B. Adverse Employment Action

The defendant argues that it is entitled to summary judgment because the plaintiff has not shown that he was subjected to an adverse employment action. *Motion*, pp. 6-7. The defendant asserted an identical argument in its previous motion for summary judgment. *Defendant's Motion for Summary Judgement and Brief in Support Thereof* [Doc. #62, filed 3/ 21/06], pp. 9-11. I rejected the argument, stating:

---

[2]As noted earlier, the evidence establishes the contrary: the Postal Service found that the plaintiff was unable to perform specific jobs and offered him alternative positions that contained physical requirements within his documented restrictions.

> The defendant does not cite to any cases which address the requirement of an "adverse employment action" in the context of a claim for disability discrimination under the Rehabilitation Act.

*Order* [Doc. #59, issued March 2, 2006, filed March 3, 2006], p. 10.

In a footnote, I noted the following:

> I note that one of the cases cited by the defendant is <u>McCrary v. Aurora Pub. Schools</u>, 2003 WL 191433 (10th Cir. Jan. 29, 2003). *Motion, p. 10.* <u>McCrary</u> states that a *prima facie* case of retaliation under the Americans with Disabilities Act ("ADA") requires a showing of an adverse employment action. <u>Id.</u> at *8. However, Claim One alleges disability discrimination; it does not allege retaliation.
>
> In order to establish a *prima facie* case of disability discrimination under the Rehabilitation Act, a plaintiff must establish that (1) he is a handicapped person within the meaning of the Act; (2) he is otherwise qualified for the job; and (3) he was discriminated against because of the handicap. <u>Woodman v. Runyon</u>, 132 F.3d 1330, 1338 (10th Cir. 1997).

<u>Id.</u>

Despite my order of March 3, 2006, the defendant merely repeated his previous argument without any support for the assertion that an adverse employment action is part of the *prima facie* case in the context of a claim for discrimination under the Rehabilitation Act or the ADA. Nevertheless, I have conducted my own research on the issue.

In <u>Couture v. Belle Bonfils Memorial Blood Center</u>, 151 Fed.Appx. 685, 2005 WL 2746704 (10th Cir. Oct. 25, 2005), the Tenth Circuit Court of Appeals stated:

> Under . . . the ADA . . ., a plaintiff must show that he suffered an adverse employment action as a part of his *prima facie* case. The Supreme Court has stated that employer conduct is adverse employment action if it constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

12

>           decision causing a significant change in benefits. Our circuit
>           liberally defines the phrase adverse employment action. It is not
>           simply limited to monetary losses in the form of wages or benefits.
>           Instead, we take a case-by-case approach, examining the unique
>           factors relevant to the situation at hand.

Id. at 689-90 (internal quotations and citations omitted).

The plaintiff argues that he was constructively forced to take leave without pay as a result of the meeting with Ms. Tabeau on January 3, 2002. *Response*, pp. 7-8. Although not all of the plaintiff's statements regarding an adverse employment action are supported by evidence, the record does support the following:

1. As a result of the meeting with Ms. Tabeau on January 3, 2002, the plaintiff suffered stress. *Motion*, Exhibit A2, p. 20, ll. 17-23.

2. The plaintiff took leave from January 5, 2002, until May 31, 2002, because of the stress. Id.

3. On February 5, 2004, the United States Department of Labor accepted a compensable claim for "Adjustment Reaction" which was causally related to the meeting. *Response*, Exhibits 3, 27.

4. The plaintiff took 670 hours of leave without pay during the time he was on leave. *Motion*, Exhibit A2, p. 12, ll. 18-20.

Under Couture, this evidence is sufficient to create a material fact dispute regarding whether the plaintiff suffered an adverse employment action as a result of the meeting with Ms. Tabeau on January 3, 2002.

### C. Hostile Work Environment

Citing Steele v. Thiokol Corp., 241 F.3d 1248, 1252 (10th Cir. 2001), the defendant asserts that the plaintiff cannot maintain a claim for hostile work environment based on his disability because the Tenth Circuit has not recognized such a claim. To the contrary, the Tenth Circuit has expressly held that such claims are actionable. Lanman v. Johnson County, Kansas, 393 F.3d 1151, 1155 (10th Cir. 2004).

Nevertheless, Claim One alleges a specific discriminatory event; it does not contain allegations of a hostile work environment. See Longo v. Regis Jesuit High School Corp., No. 02-CV-001957, 2006 WL 197336, (D. Colo. Jan. 25, 2005). In addition, I note that the plaintiff does not provide any argument or evidence to support a claim for hostile work environment. He merely recites statements of law from hostile work environment cases. *Response*, p. 8.

## IV. CONCLUSION

IT IS ORDERED that Defendant's Motion for Summary Judgment on Disability Discrimination Claim and Brief in Support Thereof is DENIED.

Dated September 6, 2006.

                BY THE COURT:

                s/ Boyd N. Boland
                United States Magistrate Judge